FILED
OCT 2 6 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID R. McGUIRE and ARLINE B. McGUIRE,

Plaintiffs,

v.

SCOTT CIECKO, Clackamas County Counsel; JUDGE RONALD E. CINNIGER, Senior Judge for the State of Oregon; KIM PRIEST, Clackamas County Zoning Enforcement Officer; KEN SPIEGLE, Clackamas County Zoning Enforcement Supervisor; and CLACKAMAS COUNTY,

Defendants.

CV. 08-1098-AC

FINDINGS AND RECOMMENDATION

---

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

In this action, plaintiffs David R. McGuire and Arlene B. McGuire (the "McGuires")

generally allege that defendants enacted and enforced unconstitutional zoning ordinances, improperly identified the Crystal Springs Assembly (the "Church") as a corporation, and wrongfully refused to acknowledge the Church as the owner of the real property located at 22988 S. Day Hill Road, Estacada, Oregon (the "Property"). The McGuires assert claims for violation of their right to freedom of religion and assembly under the First Amendment, to due process under the Fifth Amendment, and to procedural and substantive due process, and equal protection, under the Fourteenth Amendment. The McGuires ask this court to enjoin the enforcement of a state court judgment; declare that a "508 office/church" is not a corporation and that "a property owner and its occupation is a party to a case when the judgment can effect said property owner"; and award compensatory damages, punitive damages, and reasonable expenses. (Am. Compl. ¶¶ 7.1-7.8.)

Presently before the court is the motion to dismiss filed by defendants Scott Ciecko, Kim Priest, Ken Spiegle and Clackamas County (collectively referred to as "County Defendants"). The County Defendants argue that the McGuires' claims are barred by claim preclusion, the applicable statute of limitations, and absolute immunity. They also assert that, to the extent the claims are based on the Oregon constitution, the McGuires have failed to state a claim. Finally, Clackamas County (the "County") contends that it can not be held liable for the wrongful acts of its employees under § 1983 in the absence of a County policy directing the employees' wrongful acts.

The court finds that all of the McGuires' claims, with the exception of the claim related to Ciecko's alleged defamatory statements, are barred by the claim preclusion doctrine, and that the defamation claim is barred by prosecutorial immunity. The court rejects the statute of limitations argument, based on the fact that the gravamen of the McGuires' claims is that Church has owned the Property since August 2006 and, therefore, the McGuires' injury is not related to the June 1999

judgment, and declines the opportunity to address the arguments based on the Oregon constitution and *respondeat superior* liability of the County. The McGuires are unable to amend their complaint to circumvent the bars of claims preclusion or prosecutorial immunity. Accordingly, the McGuires' complaint should be dismissed with prejudice.

*Background*

This case revolves around a 1999 judgment issued by the Circuit Court of the State of Oregon for the County of Clackamas. While it is difficult to discern from the allegations in the Amended Complaint exactly what the basis of the judgment was, it apparently required the McGuires to bring the Property into compliance with applicable County codes and zoning ordinances, specifically with regard to the use of an accessory building as a residence.

Dorothy Mead created the Assembly churches in 2005. The McGuires were interested in creating an Assembly church and contracted with Mead to create the Church. The McGuires designated Mead as a director or individual in control of the Church while the McGuires served as the pastors of the Church. In August 2006, the McGuires transferred the Property to the Church. Mead filed the transfer document with the County after failing to find an outstanding judgment against the Property. (Mead Decl. at 1.)[1]

About that time, defendant Kim Priest, a zoning enforcement officer for the County, became interested in, or concerned about, the use of the Property. The McGuires referred Priest to Mead and

[1]A Declaration of Dorothy Mead was filed by the McGuires in opposition to the County Defendants' motion to dismiss and provides some clarity to the relevant background. The court is aware that it is limited to the allegations of the complaint in considering the merits of a motion to dismiss. In light of the *pro se* status of the McGuires and the lack of a clear recitation of the history behind this dispute set forth in the Amended Complaint, the court will consider the information contained in the Mead declaration to shed some light on the McGuires' claims. For the same reason, the court will excuse the lack of notarization of the declaration.

advised her that Mead was in charge of the Property. (Mead Decl. at 1.) Mead attempted, but was unable, to obtain information from both Priest and her supervisor, Ken Spiegle, about the County zoning ordinances applicable to the Property. Priest never mentioned the 1999 judgment to Mead. (Mead Decl. at 1-2.)

Thereafter, the County sent a notice of contempt charges to the McGuires, who forwarded a copy to Mead. Mead then contacted Scott Ciecko, County legal counsel, to inform him that the Church owned the Property and that she was the Church officer in charge of the Property. Ciecko advised Mead that the contempt charges would be dismissed if the appropriate permits were obtained. Ciecko refused to add either the Church or Mead as a party to the contempt proceedings. (Mead Decl. at 2.)

After a June 2008 hearing, Clackamas County Judge Ronald Cinniger found that the McGuires were "in contempt of court for disobeying the June 1999 judgment in this case due to their continued us of the accessory building on their property as an accessory dwelling (residence)." (Am. Compl. Exh. B[2] at 1.) Judge Cinniger ordered the McGuires to: 1) pay $500 as a sanction for their contempt within 30 days; 2) allow law enforcement officers to enter and inspect the accessory building for code violations on June 27, 2008; 3) bring the accessory building into compliance with all codes within 120 days from the date of inspection; and 4) allow monthly visits for six months following a determination of full compliance. Judge Cinniger advised the McGuires that failure to comply with the County codes in a timely manner would subject the McGuires to possible additional

---

[2]The exhibits that were attached to the original complaint, including Exhibit B, were not attached the to amended complaint, even though they were referenced in the amended complaint. In light of the McGuires' *pro se* status, the court will consider the amended complaint as if those exhibits were attached.

daily fines of up to $500 or one-percent of the McGuires' annual gross income, whichever is greater, pursuant to OR. REV. STAT. 33.105(1)(c). (Am. Compl. Exh. B at 1.)

The McGuires and Mead met with Priest to pay for the permits required by Judge Cinniger in the June 2008 judgment. At that time, Priest explained that the provision of services to the homeless, such as car and home repair assistance, and allowing these individuals to split wood and sell it, qualified the Church as a business and that the Church needed to obtain a permit and comply with a zoning ordinances to continue providing such services. (Mead Decl. at 2.) Specifically, Priest explained that in addition to obtaining a permit, the Church needed to widen the driveway and install lights along the driveway to continue having Church meetings on the Property. Mead explained that the Church was a "closed church," with less than ten members who attended prayer and fellowship meetings. She represents that all Church activities have stopped because "having permits that do not meet the standards of safety to others is against the doctrines and practice of the Assembly churches." (Mead Decl. at 3.)

The McGuires filed this action on September 19, 2008, generally asserting violations of their constitutional rights to freedom of religion, procedural and substantive due process and equal protection. The McGuires allege that: 1) defendant Ciecko, the prosecutor in the underlying contempt proceedings, damaged the McGuires' person, property and reputation by "attacking the plaintiffs motives for forming a church and den[ying] that Plaintiffs act[ed] in generosity" in helping the homeless; 2) defendant Priest "refus[ed] to state the substantial interest that Clackamas County has in the [P]roperty" and acted "with hostility [by] refusing to explain her actions and attitude against the plaintiffs;" 3) defendant Spiegle was responsible for supervising Priest; and 4) defendant County "created unconstitutional zoning laws that are not in the best interest, safety, morals interest

of the people who reside in Clackamas County and is in conflict with the [U]nited State[s] Constitution," and deprive the citizens of equal protection and due process as the citizens are not allowed to face their accuser or have an attorney appointed for all proceedings. (Am. Compl. ¶¶ 3.2, 3.3, 3.6 and 3.6.) The McGuires also specifically complain about the County Defendants' refusal to recognize the Church or work with the Church on the zoning violations, the entry of the judgment without prior notice to the McGuires that their religious rights would not be recognized, the absence of notice to the Church that a judgment had been placed against the Property, and the effect the judgment has had on the McGuires' ability to exercise their religious beliefs. (Am. Compl. ¶¶ 4.1 - 4.10.)

In the "Objection to Dismissal of Clackamas County Employees" filed in opposition to the County Defendants' motion to dismiss, the McGuires further clarify the specifics of their claims. In that document, the McGuires assert that they were personally injured and were denied their First Amendment right to freedom of religion when the County required the Church to obtain a permit, refused to acknowledge the Church as an independent entity or the contract placing Dorothy Mead in charge of the Church, and refused to comply with an agreement between the McGuires and Steve Marshall, a former county enforcement officer for the County, who agreed to write the Judge and stop all action in the case if the McGuires paid the judgment issued in 1999. The McGuires explain that they formed the Church as a "close church" with the intent that they would receive no benefits from the government and, in turn, would not be contacted by, or be subject to the control of, the government. The McGuires further assert that idea of running a business is contrary to the doctrines of the Church, which is to provide assistance to the needy by furnishing temporary residences or working on their motor vehicles or homes, and the McGuires' vow of poverty. In sum, the McGuires

appear to argue that any attempt to regulate or control the Church directly conflicts with the First Amendment's dictate against a state's establishment of religion or prohibition of the free exercise thereof; that the Church is not being treated the same as other religious groups or other corporations in violation of equal protection; that the failure to provide the McGuires' with legal counsel at the contempt hearing was a violation of due process, and that Ciecko defamed the McGuires by stating, in court, that the McGuires had established the Church to avoid paying taxes. (Am. Compl. ¶¶ 1.6, 3.4.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 129 S.Ct. at 1949).

In cases involving a plaintiff proceeding *pro se*, the court construes the pleadings liberally

and affords the plaintiff the benefits of any doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

A. Claim Preclusion

The County Defendants assert that the McGuires' claims are barred by claim preclusion. Specifically, the County Defendants argue that because the claims asserted in the Amended Complaint arise from the same events and could have been considered by the state court judge, the McGuires are unable to litigate the claims at this time in this venue.

As a preliminary matter, the court notes that "[u]nder the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Caligiuri v. Columbia River Bank Mortg. Group, et al.*, No. 08-3003-AA, 2007 U.S. Dist. LEXIS 39264, at *9 (D. Or. May 22, 2007) (quoting *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984)). Therefore, this court must apply the principles of claim preclusion set forth under Oregon law.

Regarding claim preclusion, the Oregon Supreme Court stated:

> [A] plaintiff who has prosecuted one action against a defendant through to a final

> judgment . . . is [precluded] . . . from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

*Drews v. EBI Cos.*, 310 Or. 134, 140 (1989) (quoting *Rennie v. Freeway Transport*, 294 Or. 319, 323 (1982)). "The rule forecloses a party that has litigated a claim against another from further litigation on that same claim on any ground or theory of relief that the party could have litigated in the first instance." *Bloomfield v. Weakland*, 339 Or. 504, 511 (2005) (citing *Dean v. Exotic Veneers, Inc.*, 271 Or. 188, 194 (1975)). Therefore, once a final judgment is entered, the parties, or those in privity to the parties, to the litigation are precluded from bringing another action against each other if: (1) the action is based "on the same factual transaction" as the first; (2) the action seeks an additional or alternative remedy; and (3) the second action could have been joined in the first action. *Drews*, 310 Or. at 140. Federal courts have applied the doctrine of claim preclusion to preclude the relitigation of claims that could have been presented to a state court, either in civil or criminal matters, in a later section 1983 action involving parties to the state court action. *Allen v. McCurry*, 449 U.S. 90 (1980)("[N]othing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings."); *Webber v. Giffin*, Civil No. 07-1675-KI, 2008 WL 5122702 (D. Or. Dec. 3, 2008)(plaintiff barred from pursuing claims, including constitutional violations under § 1983, where claims could have been raised in administrative proceeding addressing plaintiff's violation of Oregon water laws).

The order issued by Judge Cinniger finding the McGuires to be in contempt of the June 1999 judgment and County codes and zoning ordinances is a final judgment. The McGuires elected not to appeal the order to the state appellate court and, instead, filed this action in federal court. All of

the parties involved in this action were parties, or in privity with parties, to the state court litigation. Based on the allegations of the amended complaint, the background provided by Mead, and the details of Judge Cinniger's order, it is apparent that the federal action is based on the same facts and circumstances giving rise to the state court action, that this action seeks additional remedies, and that the claims asserted in this action could have been, if not were, asserted in the state court action.

First, it is clear that the gravamen of the McGuires' claims are that the County Defendants are preventing them from practicing their religious beliefs by enforcing County codes and zoning ordinances relevant to the Property. In the state court action, Judge Cinniger considered whether the Property was in violation of County codes and zoning ordinances and whether the owner of the Property should be liable for such violations. It is evident from Judge Cinniger's order that the Church's interest in the Property was an issue at the hearing.[3] Accordingly, this action is based on the same factual transaction as the state court action – the Church's interest in the Property and how affects the application of the County's codes and zoning ordinances to the Property.

Second, the current action seeks relief additional to the original relief sought. Here, the McGuires are seeking to enjoin the County Defendants from enforcing the June 20, 2008, state court judgment as well as compensatory and punitive damages. In the state court action, the County was seeking to enforce the County codes and zoning ordinances and the McGuires were seeking protection from such enforcement based on the religious nature of their use of the Property. The two actions involved different desired remedies which satisfies the second requirement for claim preclusion.

---

[3]The Order specifically states that "All parties having an interest in the [Property], including David and Arlene McGuire and the Crystal Springs Assembly, were adequately represented at the hearing."

Third, the claims asserted in this action could have been asserted in the state court action. A state court may properly hear claims arising under § 1983. *See Martinez v. California*, 444 U.S. 277, 284 (1980) (in an action arising under § 1983, the court recognized the general rule that "where 'an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court.'" (citing *Testa v. Katt*, 330 U.S. 386, 391 (1947)). All of the McGuires' claims seeking protection based on the Church's ownership of the Property and their religious use of the Property could properly have been raised and adjudicated in the state court action. All of the acts complained about by the McGuires, with the exception of the alleged defamatory statements made by Ciecko, occurred prior to the state court hearing. Priest's conduct in inspecting the Property and refusing to provide information to the McGuires, Speigle's supervision of Priest, and the County's enactment of unconstitutional zoning laws, had all occurred and could have been addressed by Judge Cinniger in June 2008.

The court finds that all of claims alleging constitutional violations could have been asserted in the state court action and that the McGuires are barred by the doctrine of claim preclusion from asserting those claims in this court at this time. Accordingly, with the exception of the defamation claim against Ciecko, all of the McGuires' claims should be dismissed for failure to state a claim.

B. Statute of Limitations

The County Defendants also argue that the McGuires' claims are barred by the two-year statute of limitations applicable to § 1983 actions and the one-year statute of limitations applicable to § 1986 actions brought in this state. The County Defendants assert that any injury to the McGuires derives from the June 1999 judgment. The court does not agree. The McGuires seek

redress for injuries caused by the County Defendants' refusal to recognize the Church as the owner of the Property and the alleged constitutional violations resulting from such refusal. The record reveals that the Church did not exist and did not have any interest in the Property prior to August 2006. Clearly, the June 1999 judgment did not cause the injuries the McGuires are seeking to redress in this action. In any event, the only claim not barred by claim preclusion is the McGuires' claim for defamation against Ciecko. The alleged defamatory statements were made during the June 2008 hearing before Judge Cinniger. Plaintiff filed this action a few months later, well within the one-year statute of limitations for defamation. OR. REV. STAT. 12.110 (2007). Because the current action is primarily based on the Church's ownership of the Property, which did not occur until August 2006, the June 1999 judgment is not source of the McGuires' injuries and their claims are not barred by the applicable statutes of limitation.

C. Absolute Immunity

The County Defendants argue that they were acting as an integral part of the judicial process in pursuing the case against the McGuires and are, therefore, entitled to absolute immunity. Government officials involved in the prosecution of a citizen are shielded from litigation by a form of judicial immunity. Prosecutorial or quasi-judicial immunity protects prosecutors from liability for conduct in "initiating a prosecution and in presenting the State's case," or when their activities are "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)(extending the common law absolute liability for malicious prosecution and false or defamatory statements made by a prosecutor in judicial proceedings to § 1983 actions). Absolute prosecutorial immunity is not defeated by a showing of malicious or wrongful conduct. *Id.* at 431. The Supreme Court has extended absolute prosecutorial immunity to state attorneys and agency

officials performing functions similar to those of a prosecutor in initiating and pursuing administrative enforcement proceedings. *Butz v. Economou*, 438 U.S. 478, 515-517 (1978).

The only claim surviving the claim preclusion argument is based on Ciecko's alleged defamation of the McGuires at the June 2008 hearing. The alleged defamatory statements were made during a court proceeding and in furtherance of Ciecko's prosecution of the contempt charges. Ciekco's statements were made in the performance of traditional prosecutorial duties and were intimately associated with the judicial process. Accordingly, Ciecko is entitled to absolute immunity on this claim. The defamation claim against Ciecko should be dismissed with prejudice.

D. Dismissal with Prejudice

The allegations against the County Defendants as set forth in the amended complaint are barred by either claim preclusion or prosecutorial estoppel. No amendment to the McGuire's claims will avoid the application of claim preclusion and prosecutorial estoppel. Accordingly, the dismissal of the claims against the County Defendants should be with prejudice.

*Conclusion*

The County Defendants motion (31) to dismiss should be GRANTED and the claims against them should be dismissed with prejudice.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **November 10, 2009**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy

/////

/////

of the objections are filed. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of October, 2009.

JOHN V. ACOSTA
United States Magistrate Judge