

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID R. McGUIRE and
ARLINE B. McGUIRE,

               Plaintiffs,

      v.

SCOTT CIECKO, Clackamas County
Counsel; JUDGE RONALD E.
CINNIGER, Senior Judge for the State
of Oregon; KIM PRIEST, Clackamas
County Zoning Enforcement Officer;
KEN SPIEGLE, Clackamas County
Zoning Enforcement Supervisor; and
CLACKAMAS COUNTY,

               Defendants.

CV-08-1098-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

Page -1- FINDINGS AND RECOMMENDATION                             {SSM}

*Findings and Recommendation*

Plaintiffs David R. McGuire and Arlene B. McGuire (the "McGuires") brought suit against Circuit Judge Ronald E. Cinniger ("Judge Cinniger"), Scott Ciecko ("Ciecko"), Kim Priest ("Priest"), Ken Spiegle ("Spiegle"), and Clackamas County ("County"), generally alleging that defendants enacted and enforced unconstitutional zoning ordinances related to the real property located at 22988 S. Day Hill Road, Estacada, Oregon (the "Property"). The McGuires allege claims for violation of their right to freedom of religion under the First Amendment, to due process under the Fifth Amendment, and to procedural and substantive due process, and equal protection, under the Fourteenth Amendment. Defendants Ciecko and Judge Cinniger have been dismissed from the action, leaving only Priest, Spiegle and the County as defendants (collectively referred to as "remaining County Defendants").

Presently before the court is the remaining County Defendants' motion for summary judgment. For the reasons set forth below, the motion should be granted.

*Background*

A. Factual Background

This case revolves around a 1999 judgment issued by the Clackamas County Circuit Court. While there is not a copy of the judgment in the record, the Complaint filed in Clackamas County on April 1, 1999, sheds light on the nature of the allegations. (Plaintiffs' Response to Amended Motion for Summary Judgment (docket # 81), Ex. 1.) The Complaint alleges the McGuires committed the following violations on the Property: 1) an accessory building was converted into a second dwelling without land use approval, in violation of Zoning and Development Ordinance ("ZDO") § 406.08; 2) there are several unlicensed and/or inoperable

vehicles visible from the County road and from adjacent properties, in violation of Solid Waste and Waste Management Ordinance ("SWWMO") § 8.01;  3) the accessory building is illegally connected to the sewage system without County authorization, in violation of OAR 340-71-130(5); and 4) the McGuires installed plumbing  and electrical wiring in the accessory building without the required permits and inspections required by the One and Two Family Dwellings Speciality Code ("CABO Code") 1 §§ 111.1 and 111.3.5.  (*Id.* at 3-5.)

Dorothy H. Mead ("Mead") created the Assembly churches in 2005.  (McGlone Declaration (docket # 73), Ex. 2 at 1.)  Sometime thereafter, McGuires were interested in creating an Assembly church and contracted with Mead to create the Church, designating Mead as a director or individual in control of the Church, while the McGuires served as the pastors of the Church.  (*Id.*)  In August 2006, the McGuires transferred the Property to the Church.  (*Id.*)  Mead filed the transfer document with the County after failing to find an outstanding judgment against the Property.  (*Id.*)

Shortly thereafter, defendant Priest, a zoning enforcement officer for the County, became interested in, or concerned about, the use of the Property.  (*Id.*)  The McGuires referred Priest to Mead and advised her that Mead was in charge of the Property.  (*Id.*)  Mead attempted, but was unable, to obtain information from both Priest and Priest's supervisor, Ken Spiegle ("Spiegle"), about the County zoning ordinances applicable to the Property.  (*Id.* at 1-2.)  Priest never mentioned the 1999 judgment to Mead. (*Id.* at 2.)

Thereafter, the County sent a notice of contempt charges to the McGuires, who forwarded a copy to Mead.  (*Id.*)  Mead then contacted defendant Ciecko, County legal counsel, to inform him that the Church owned the Property and that she was the Church officer in charge of the

Property. (*Id.*) Ciecko advised Mead that the contempt charges would be dismissed if the appropriate permits were obtained. (*Id.*) Ciecko refused to add either the Church or Mead as a party to the contempt proceedings. (*Id.*)

After a June 2008 hearing, Judge Cinniger found that the McGuires were "in contempt of court for disobeying the June 1999 judgment in this case due to their continued use of the accessory building on their property as an accessory dwelling (residence)." (McGlone Decl. Ex. 1 at 1.) Judge Cinniger ordered the McGuires to:  1)  pay $500 as a sanction for their contempt within 30 days;  2) allow law enforcement officers to enter and inspect the accessory building for code violations on June 27, 2008;  3)  bring the accessory building into compliance with all codes within 120 days from the date of inspection; and 4) allow monthly visits for six months following a determination of full compliance. (*Id.* at 2-3.) Judge Cinniger advised the McGuires that failure to comply with the County codes in a timely manner would subject the McGuires to possible additional daily fines of up to $500 or one-percent of the McGuires' annual gross income, whichever is greater, pursuant to OR. REV. STAT. 33.105(1)(c). (*Id.* at 2.)

The McGuires and Mead met with Priest to pay for the permits required by Judge Cinniger in the June 2008 judgment. (McGlone Decl. Ex. 2 at 2.) At that time, Priest explained that the provision of services to the homeless, such as car and home repair assistance, and allowing these individuals to split wood and sell it, qualified the Church as a business and that the Church needed to obtain a permit and comply with a zoning ordinances to continue providing such services. (*Id.*) In addition to obtaining a permit, the Church needed to widen the driveway and install lights along the driveway to continue having Church meetings on the Property. (*Id.* at 3.) Mead explained that the Church was a "closed church," with less than ten members who

attended prayer and fellowship meetings. (*Id.*) She represents that all Church activities have stopped because "having permits that do not meet the standards of safety to others is against the doctrines and practice of the Assembly churches." (*Id.*)

B. Procedural History

The McGuires filed this action on September 19, 2008, generally asserting violations of their constitutional rights to freedom of religion, procedural and substantive due process and equal protection. The McGuires allege that: 1) defendant Ciecko, the prosecutor in the underlying contempt proceedings, damaged the McGuires' person, property and reputation by "attacking the plaintiffs motives for forming a church and den[ying] that Plaintiffs act[ed] in generosity" in helping the homeless; 2) defendant Priest "refus[ed] to state the substantial interest that Clackamas County has in the [P]roperty" and acted "with hostility [by] refusing to explain her actions and attitude against the plaintiffs;" 3) defendant Spiegle was responsible for supervising Priest; and 4) defendant County "created unconstitutional zoning laws that are not in the best interest, safety, morals interest of the people who reside in Clackamas County and is in conflict with the [U]nited State[s] Constitution," and deprive the citizens of equal protection and due process as the citizens are not allowed to face their accuser or have an attorney appointed for all proceedings. (Am. Compl. ¶¶ 3.2, 3.3, 3.5 and 3.6.) The McGuires also specifically complain about the refusal of the County Defendants to recognize the Church or work with the Church on the zoning violations, the entry of the judgment without prior notice to the McGuires that their religious rights would not be recognized, the absence of notice to the Church that a judgment had been placed against the Property, and the effect the judgment has had on the McGuires' ability to exercise their religious beliefs. (*Id.* at ¶¶ 4.1 - 4.10.)

On November 21, 2008, the court granted the McGuires *in forma pauperis* status and relieved them of the obligation to pay a filing fee. (Am. Order to Proceed *In Forma Pauperis* (docket # 2) at 2.) On that date, the court also denied the Church's application for *in forma pauperis* status based on the fact that the Church is an artificial entity and not entitled to such status. The court directed the Church to pay the $350 filing fee within thirty days or face dismissal as a plaintiff in this action. (*Id.*)

On January 12, 2009, the court issued an Order to Show Cause noting that the Church had not paid the filing fee, directing the Church to show good cause, in writing, why the filing fee had not been paid, and advising that failure to do so would result in dismissal of the Church as a plaintiff in this action. (Order to Show Cause (docket # 17) at 2). The Church failed to respond to the show cause order. On March 6, 2009, the court dismissed the Church from this action, without prejudice, for failure to pay the filing fee. (J. of Dismissal of Pl. Crystal Springs Assembly (docket # 30) at 2.)

On February 25, 2009, Mead filed a motion to intervene, wherein she claimed that she has an unprotected interest in this litigation by virtue of her membership in, and position as director of the Church. On August 27, 2009, the court issued a Findings and Recommendation denying Mead's motion because she was not seeking to intervene to protect her own interests but, rather, the interests of the Church, and that since the Church was dismissed without prejudice when it failed to pay the filing fee, Mead should not be allowed to represent the Church's interest through intervention when the Church elected not to pursue its own interests when faced with paying the filing fee. (Findings and Recommendation (docket # 48) at 2-3). The court also determined that allowing Mead to intervene to protect the Church's interests would

impermissibly allow her to effectively act as the Church's representative to the court. (*Id*. at 3).

On September 30, 2009, Judge Brown adopted the court's Findings and Recommendation in full.

On February 9, 2009, Judge Cinniger filed a motion to dismiss the claims against him on the basis that the McGuires failed to state a valid § 1983 claim and that judicial immunity and sovereign immunity bar any valid claims. On September 23, 2009, the court issued a Findings and Recommendation dismissing Judge Cinniger from the action with prejudice because the allegations fail to state a claim for relief under § 1983 and are barred by both judicial and sovereign immunity. (Findings and Recommendation (docket # 56) at 9.) Judge Brown adopted the court's Findings and Recommendation on November 24, 2009.

On March 19, 2009, the County defendants filed a motion to dismiss. The court issued a Findings and Recommendation on October 26, 2009, recommending that the claims against them be dismissed with prejudice because the doctrine of claim preclusion barred all claims against the County defendants except for the defamation claim against Ciecko, because that claim arose after the state-court action. (Findings and Recommendation (docket # 59) at 11.) However, the defamation claim was barred by prosecutorial immunity. (*Id*. at 13.) On November 24, 2009, Judge Brown disagreed in part and concluded that the doctrine of claim preclusion does not operate to bar the McGuires' claims against the County Defendants. (Order (docket # 62) at 5-6.) Judge Brown agreed that Ciecko was protected by absolute prosecutorial immunity. (*Id*. at 6.) Accordingly, Ciecko was dismissed with prejudice and the matter referred back to this court for reconsideration of the merits of the McGuires' claims against the remaining County defendants, Priest, Spiegle, and the County. (*Id*.) On February 9, 2010, this court denied as moot the remaining portion of the motion to dismiss the original complaint, because the McGuires had

filed an amended complaint. On June 16, 2011, the remaining County defendants filed the current motion for summary judgment.

### Legal Standard

Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Id.*

In civil cases involving a plaintiff proceeding *pro se*, this court construes the pleadings liberally and affords the plaintiff the benefit of any doubt. *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008). *Pro se* complaints are held to a less strict standard than those drafted by a lawyer. *Bonner v. Lewis*, 857 F.2d 559, 563 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings of *pro se* litigants are held to even less rigor than those drafted by attorneys). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *See Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a *pro se* plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque*, 554 F.3d 1060, 1061 (9th Cir. 2008).

### Discussion

The McGuires generally allege claims for violation of their right to freedom of religion under the First Amendment, to due process under the Fifth Amendment, to procedural and

substantive due process, and equal protection, under the Fourteenth Amendment.  They also

appear to allege a common law claim for defamation.  The only remaining defendants are the

County, zoning enforcement officer Priest, and her supervising officer, Spiegle.

A.  Supervisor Liability

As a general rule, "liability under § 1983 must be based on the personal involvement of

the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert denied*, 525

U.S. 1154 (1999).  Accordingly, "state officials are not subject to suit under § 1983 unless they

play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814

F.2d 565, 568 (9th Cir. 1987).  "A plaintiff must allege facts, not simply conclusions, that show

that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152

F.3d at 1194.  There is no vicarious liability under § 1983 because "[l]iability . . . must be based

on the personal involvement of the defendant." *Id.*  A "supervisor is only liable for constitutional

violations of his subordinates if the supervisor participated in or directed the violations, or knew

of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

(citations omitted).

The only remaining individually named defendants are County zoning enforcement

officers Priest and Spiegle.  The bulk of the factual allegations relate to Priest's conduct in

investigating the alleged zoning violations on the Property.  There are no specific allegations

against Spiegle, other than that he was Priest's supervisor during the relevant time period.  There

are no specific allegations that he was personally involved in conduct or even that he knew of

Priest's conduct that allegedly deprived the McGuires of their constitutional rights, other than in

his capacity as her supervisor.  Even giving the McGuires the benefit of every doubt, they have

not alleged sufficient personal involvement to state a § 1983 claim against Spiegle or to hold

Spiegle liable under § 1983.   Accordingly, Spiegle should be dismissed from the action.

B.  Municipal Liability

    Local governmental units or municipalities, including counties, can be sued as a "person"

under § 1983 when an official policy results in a constitutional violation.  *Hervey v. Estes*, 65

F.3d 784, 791 (9th Cir. 1995) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 (1978)).

Municipalities and other local governing bodies may be liable under any of three theories:  (1) if

an employee was acting pursuant to an expressly adopted official policy; (2) if an employee was

acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a final

policymaker.  *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).  State law determines whether an

employee is a final policymaker.  *Id*.  An employee may act as a de facto policymaker without

explicit authority and may be delegated as a final policymaker by an official who possesses such

authority.  *Id*.  A policy may be a rule or practice applicable in many situations as well as a

"course of action tailored to a particular situation and not intended to control decisions in later

situations."  *Id*. at 983 (emphasis deleted).  "A plaintiff cannot prove the existence of a municipal

policy or custom based solely on the occurrence of a single incident or unconstitutional action by

a non-policymaking employee."  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir.

1989) (emphasis deleted).

> The plaintiff must also demonstrate that, though its *deliberate* conduct, the
> municipality was the "moving force" behind the injury alleged.  That is, a
> plaintiff must show that the municipal action was taken with the requisite
> degree of culpability and must demonstrate a direct causal link between
> the municipal action and the deprivation of federal rights.

*Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citation

omitted) (emphasis in original).

Here, it does not appear that the McGuires are alleging that Priest was acting as a final policymaker. Therefore, the court reads the McGuires' allegations to target Priest in her official capacity as a County zoning enforcement officer, and thus, that she was acting pursuant to official County policies or longstanding County practices that allegedly violated their constitutional rights. Because a claim against Priest in her official capacity in effect is a claim against the County, suing Priest in her official capacity is no different than suing the County. Thus, to the extent that the McGuires purport to sue Priest personally, Priest should be dismissed from the action.

C. First Amendment

The heart of the McGuires' complaint is that the County Defendants' enforcement of County codes and zoning ordinances directly conflicts with the First Amendment's dictate against a state's establishment of religion or prohibition of the free exercise thereof. The McGuires appear to assert that they were denied their First Amendment right to freedom of religion when the County required the Church to obtain a permit and refused to acknowledge the Church as an independent entity or the contract placing Dorothy Mead in charge of the Church. The McGuires explain that they formed the Church as a "closed church" with the intent that they would receive no benefits from the government and, in turn, would not be contacted by, or be subject to the control of, the government. The McGuires further assert that the County's requirement that they be licensed as a business is contrary to the doctrines of the Church, which is to provide assistance to the needy by furnishing temporary residences or working on their motor vehicles or homes, and the McGuires' vow of poverty.

"The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof ....*'" *Employment Div., Oregon Dep't of Human Resources v. Smith,* 494 U.S. 872, 876-77 (1990) (citing U.S. Const. amend. 1) (internal citation omitted) (emphasis in *Smith* ). The First Amendment's free exercise clause is not ordinarily offended by "neutral" and "generally applicable" laws that merely have "the incidental effect" of burdening religiously motivated conduct. *Id.* at 878, 881. While the free exercise clause forbids any regulation of beliefs as such, a neutral and generally applicable law that burdens conduct regardless of whether it is motivated by religious or secular concerns is not subject to strict scrutiny. *Church of Lukumi Babalu Aye., Inc. v. Hialeah,* 508 U.S. 520, 546 (1993); *Smith,* 494 U.S. at 878. A law is neutral if it does not target religiously motivated conduct either on its face or as applied in practice. *See Lukimi,* 508 U.S. at 533-40.

If the targeted law is of general application and is not targeted at religion, it is subject only to rational basis scrutiny, even though it may have an incidental effect of burdening religion. *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1032 (9th Cir. 2004). Under rational basis review, the law will pass constitutional muster unless it is not rationally related to a legitimate governmental interest. *Id.* However, if such a law burdens the free exercise of religion and some other constitutionally-protected activity, the strict scrutiny test applies and the law must be narrowly tailored to advance a compelling government interest. *Id.*

The McGuires have not provided any evidence that the ordinances at issue here are not of general application. As referenced in the 1999 complaint, the ordinances that are the subject of

this action regulate general land use, such as the conversion of buildings into residential

dwellings, storage of inoperable vehicles in public view, connection to the County's sewage

system, and the safe installation of plumbing and electrical wiring, all of which are legitimate

government interests, and do not appear to target religious practice at all.

The McGuires assert that the ordinances have interfered with the practice of their religion

because they formed the Church with the intent that they would receive no benefits from the

government and, in turn, would not be contacted by, or be subject to the control of, the

government, and that the County's requirement that they obtain permits directly interferes with

this aspect of their religion. The McGuires appear to interpret the free exercise clause as

allowing them to practice their religious beliefs without any intrusion by the government,

however slight or whatever the subject. Such an interpretation is not supported by the case law,

and the McGuires have presented no evidence that the County ordinances at issue were anything

other than permissible, generally applicable laws that do not offend the First Amendment. Nor

have they presented any evidence, other than conclusory allegations, that the County was

motivated by a disdain for the McGuires' religious beliefs when it enacted or enforced the

ordinances against them. In fact, the record reveals that the ordinances were in place at least as

far back in 1999, when the original judgment against them was issued. This occurred long before

the McGuires became affiliated with the Church, which according to Mead, happened sometime

in 2005 or 2006.

Thus, the McGuires have no viable claim for violation of their rights under the First

Amendment and defendants should be granted summary judgment on this issue.

/ / /

D.  Procedural Due Process

The McGuires appear to be making several claims regarding the violation of their procedural due process rights under the Fifth and Fourteenth Amendment.  The Firth Amendment's due process guarantees apply only to the federal government.  *Binque v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).  The McGuires name no federal agencies or agents as defendants, rendering the Fifth Amendment due process protections inapplicable.  Accordingly, the court will construe the McGuires' procedural due process claims as arising under the Fourteenth Amendment.

First, the McGuires claim that the County enacted unconstitutional zoning laws that deprive citizens of due process because they "are not allowed to face their accuser [or] have an attorney appointed for all proceedings." (Am. Compl. ¶ 3.6.)  The McGuires apparently contend that the zoning violation proceedings underlying this dispute did not have the same constitutional protections afforded criminal proceedings.  The protections required in criminal proceedings do not generally extend to civil proceedings such as the zoning enforcement action at issue here. *See e.g., United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986) (finding no constitutional right to counsel in a civil case because "the constitutional requirements for civil actions differ significantly from those for criminal actions[.]").

Second, the McGuires allege that they were not given adequate notice of the judgment prior to the June 20, 2008, court date, and that the judgment, insofar as it served as a notice, was inadequate because it did not indicate that their religious rights would be interfered with.  (Am. Compl. ¶¶ 4.2, 4.3, 4.4, 4.5.)  "The fundamental requirements of procedural due process are notice and an opportunity to be heard." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492-93

{SSM}

(9th Cir.), *cert. denied*, 498 U.S. 816 (1990). Once the McGuires received the notice of the contempt charges, they forwarded it to Mead, and she contacted Ciecko in order to advise him that she was the Church representative. (McGlone Decl., Ex. 2 at 1-2.) That the McGuires forwarded this notice to Mead, the Church representative, shows that the McGuires knew or had reason to know that the proceeding implicated their religious rights. Furthermore, after being advised that the contempt charges would be dismissed if the appropriate permits were obtained, the McGuires appeared at and represented themselves at the contempt hearing in June 2008. (McGlone Decl., Ex. 1 at. 1.) Thus, the record is clear that the McGuires were afforded with notice and an opportunity to appear and contest the findings of the of the County's zoning enforcement officers that formed the basis for the contempt proceeding.

Finally, to the extent that the McGuires are challenging the validity of the County's original enactment of the zoning ordinances, this claim is also without merit. It is well established that when a governmental body passes a law, such as a zoning ordinance, that affects a relatively large number of people, this does "not ordinarily give rise to constitutional due process requirements." *Harris v. County of Riverside*, 904 F.2d 497, 502 (9th Cir. 1990); *see also Bi-Metallic Investment Company v. State Board of Equalization*, 239 U.S. 441, 445 (1915). Here, each of the County regulations enforced by the judgment were enacted pursuant to state law. (*See* Plaintiffs' Response, Ex. 1 at p. 1.) Each of the codes cited in the County's original 1999 complaint against the McGuires relate to the health, safety, or welfare of the community, and thus, are a valid exercise of the County's police power. *See Conner*, 897 F.2d at 1493. Accordingly, defendants should be granted summary judgment on any and all procedural due process claims.

{SSM}

E.  Equal Protection and Substantive Due Process Claims

The McGuires appear to assert that the County's enforcement of its ordinances denies them equal protection and substantive due process because the codes are selectively enforced only against those people who have complaints against them.  (Am. Compl. ¶ 1.7).  To state a claim under the Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren*, 152 F.3d at 1194.  However, because enforcement of municipal codes based on complaints does not qualify as a protected class for equal protection purposes, the regulations need only be "rationally related to legitimate legislative goals to pass constitutional muster." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citation omitted).  The "rational relationship" test also applies to substantive due process challenges.  *See Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 165 (9th Cir. 1993).

The County's decision to investigate violations of its ordinances based upon citizen complaints is completely rational, especially given that the ordinances largely relate to nuisances on private property.  *See Harvey v. City of Utica, New York*, No. 96-CV-831 (RSP/DS), 1997 WL 67785 at *4 (N.D.N.Y. February 13, 1997) ("the City chose which code violations to pursue on the basis of citizen complaints, [which is] an eminently reasonable and non-discriminatory basis.")  There is no doubt that the County has a legitimate interest in preserving government resources, and its decision to pursue investigation of violation of its ordinances only when there is a complaint is rationally related to that interest.  Accordingly, the County Defendants should be granted summary judgment on this issue.

{SSM}

F.  Defamation

The McGuires allege that "[t]he Judgment and Scott Ciecko action enforced the statement that the plaintiff's [*sic*] formed the church to avoid paying tax's [*sic*]." (Am. Compl. ¶ 4.6.) They further allege that "Scott Ciecko step out side [*sic*] of his official capacity in attacking the plaintiffs motives for forming a church and denied that Plaintiffs action in generosity; helping the homeless is a crime and or a business." (Am. Compl. ¶ 3.2.)

As a preliminary issue, Ciecko has been dismissed from the action, on the basis of prosecutorial immunity.  As discussed above, Spiegle should be dismissed from the action because the McGuires have failed to allege sufficient personal involvement, and any claim against Priest is the same as a claim against the County.  To the extent that they intend to maintain a defamation claim against the County by way of Ciecko's allegedly defamatory conduct, OR. REV. STAT. 30.265(2) precludes the County's liability for an injury that is caused by an employee, such as Ciecko, who is immune from liability.  Even assuming that this does not bar the claim, the McGuires have not alleged a claim for defamation against any of the remaining County Defendants.

"A defamatory communication is one that would subject another to '. . . hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other].'" *Reesman v. Highfill*, 327 Or. 597, 603, 965 P.2d 1030, 1034 (1998) (quoting *King v. Menolascino*, 276 Or. 501, 504, 555 P.2d 442, 443 (1976)) (alterations in original).  "To be actionable, a communication must be both false and defamatory." *Id.*, 327 Or. at 604, 965 P.2d at 1034.  Truth is a complete defense to a defamation claim. *Bahr v. Statesman Journal*, 51 Or.

App. 177, 180, 624 P.2d 664, 666 (1981), *rev denied*, 291 Or. 118, 631 P.2d 341 (1981). Furthermore, the defamatory statement must be about the plaintiff and it must be published or communicated. *Wallulis v. Dymowski*, 323 Or. 337, 343, 918 P.2d 755, 758 (1996) (*en banc*) (citations omitted). A statement is published when it is "communicated to a third party." *Id.*

"The court, rather than the jury, determines whether a communication is capable of a defamatory meaning." *Reesman*, 327 Or. at 603, 965 P.2d at 1034 (citing *King*, 276 Or. at 504, 55 P.2d at 443). "In making that determination, the court looks to the context in which the communication was made." *Id.* "Even a communication that is not defamatory on its face may be defamatory if a reasonable person could draw a defamatory inference from the communication." *Id.*

Oregon law recognizes two privileges as defenses to defamation, an absolute and a qualified privilege. *Wallulis*, 323 Or. at 347-48, 918 P.2d at 760-61. An absolute privilege bars a claim for defamation, while a qualified privilege does not bar the claim, but "requires [the] plaintiff to prove that the defendant abused the privileged occasion." *Id.* An absolute privilege applies in a narrow range of circumstances where "the public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation." *Id.*, 323 Or. at 349, 918 P.2d at 761. Statements made as part of judicial and quasi-judicial proceedings are absolutely privileged. *See Binder v. Oregon Bank*, 284 Or. 89, 91, 585 P.2d 655, 656 (1978).

Even assuming that the judgment referred to by the McGuires is a defamatory "statement," and that it was published, it is undoubtedly part of a quasi-judicial proceeding and is absolutely privileged. The McGuires have presented no evidence to overcome the County's

Page -18- FINDINGS AND RECOMMENDATION                                {SSM}

absolute privilege, and they have made no specific allegations against Spiegle or Priest.  Thus,

defendants should be granted summary judgment on this claim.

G.  Qualified Immunity

The doctrine of qualified immunity protects "government officials performing

discretionary functions . . . from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing a claim of qualified

immunity, the court must make two inquiries:  "First, we inquire whether, taken in the light most

favorable to the party asserting the injury, that party has established a violation of a federal right.

Assuming this threshold inquiry is satisfied, we consider whether [defendants'] conduct violated

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Preschooler II v. Clark County Bd. of Trs.*, 479 F.3d 1175, 1179-80 (9th Cir. 2007)

(internal quotations and citations omitted).  However, courts may "exercise their sound discretion

 in deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, __ U.S. __,

129 S. Ct. 808, 818 (2009).  Having found no violation of a constitutional right, the court need

not reach the issue of qualified immunity.

H.  *Rooker-Feldman* Doctrine

Defendants argue that they are entitled to summary judgment because the *Rooker-*

*Feldman* doctrine operates to bar the McGuires' claims because they are inextricably

intertwined with the state court judgment, and thus, constitute an impermissible de facto appeal.

Under the *Rooker-Feldman* doctrine, a federal district court does not have subject matter

jurisdiction over cases that seek review of state-court judgment. *Noel v. Hall*, 341 F.3d 1148,

1154 (9th Cir. 2003) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462

(1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).  "The clearest case for dismissal

based on the *Rooker-Feldman* doctrine occurs when 'a federal plaintiff asserts as a legal wrong

an allegedly erroneous decision by a state court, and seeks relief from a state court judgment

based on that decision . . .'" *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir), *cert.*

*denied*, 552 U.S. 1037 (2007) (quoting *Noel*, 341 F.3d at 1164).

      The doctrine bars federal courts "from exercising subject matter jurisdiction over a suit

that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d

855, 859 (9th Cir. 2008) (internal quotation omitted).  An action brought in federal court

constitutes such an appeal "if claims raised in the federal court action are 'inextricably

intertwined' with [a] state court's decision such that the adjudication of the federal claims would

undercut the state ruling or require the district court to interpret the application of state laws of

procedural rules."  *Id*. (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003), *cert.*

*denied*, 540 U.S. 1213 (2004)).  "The *Rooker-Feldman* doctrine applies even when the challenge

to the state-court decision involves federal constitutional issues, including those anchored in

federally protected rights to due process and equal protection."  *Denison v. Brown*, No. CV-07-

1586-BR, 2008 WL 819329 at *7 (D. Or. March 24, 2008) (citing *Bates v. Jones*, 131 F.3d 843,

856 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998)).

      The McGuires assert that the *Rooker-Feldman* doctrine does not apply because they do

not seek to vacate the 1999 judgment since it has been satisfied.  (*See* Plaintiffs' Response at p.

10.)  Instead, they offer the 1999 judgment as evidence that the defendants "conspire[d] as one to

deny plaintiffs of constitutionally protect[ed] land rights [and] is a sham proceeding under color

of law." (*Id.*)  Even accepting as true the McGuires' claim that they do not seek to vacate the

state court judgment, their claims are inextricably intertwined with the state court decision such

that the adjudication of the federal claims would undercut the state ruling because each of their

allegations, to the extent they can be discerned, attack the constitutionality of the underlying

proceedings.  The McGuires' amended complaint revolves around the legitimacy of the 1999

judgment and subsequent 2008 contempt proceeding and judgment.  As discussed above, the

McGuires claim that the 2008 judgment was wrongly issued because the McGuires were singled

out for investigation because of their religious beliefs, and the state proceedings were improperly

conducted because the McGuires were denied procedural due process and equal protection.  *See*

*Lopez v. Kennedy*, No. CV-08-706-PK, 2008 WL 5245354 at *4 (D. Or. Dec. 16, 2008) (holding

that the *Rooker-Feldman* doctrine required dismissal of the plaintiff's claim that a state court

stalking order was wrongly issued, that the state proceedings were improperly instituted, and/or

that the state proceedings were improperly conducted).  Among other relief, the McGuires ask

the court to enjoin defendants from enforcing the 2008 judgment and to declare that the Church

need not comply with various County ordinances, which would, in essence undo the state court

judgment which required compliance with County ordinances.  As such, the claims are barred by

the *Rooker-Feldman* doctrine and defendants should be granted summary judgment.

### Recommendation

For the reasons discussed above, Defendants' motion for summary judgment

(docket # 70) should be GRANTED.

/ / /

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due November 24, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 10th day of November, 2010.

JOHN V. ACOSTA
United States Magistrate Judge